Rick John Properties Corp. Rick John Properties Inc. On behalf of the company, Mr. President, trustees, and all representing companies, in the name of Rick John Properties Co. Rick John Properties Corp. Thank you. Good afternoon. May it please the Court, Counsel. My name is Greg Zoloni. I represent the plaintiff in this case, David D'Agostino. As the Court is likely aware, this is our appeal from a trial court where we're granting summary judgment in favor of the defendant. At the trial court level, the defendant raised three arguments for summary judgment. The Minimus Doctrine, Notice, and Open and Obvious Doctrine. The trial court specifically granted the summary judgment solely on the Open and Obvious Doctrine. That is obviously where our appeal then contests. It is our position that the trial court err in ruling that, as a matter of law, the condition on the defendant's property was Open and Obvious. Is pleading the De Minimis Doctrine and the Open and Obvious Doctrine contradictory? On the defense side, I don't think so, necessarily pleading it. I think it's a way that the defense can easily try to pigeonhole the case into a heads we win, tails you lose type argument, saying that any defect of a certain size, well, if it's so small it's De Minimis, then probably by definition, it has to be Open and Obvious. And I think that argument or that pleading in a summary judgment type motion, I think mischaracterizes kind of the legal standards under each of the two. Well, if it was found to be De Minimis, why would you have to get to the Open and Obvious? And by pleading that there wouldn't be a conflict, you acknowledge that, right? I acknowledge that. Because the Open and Obvious Doctrine has to consider, well, generally it's a question of fact to begin with, and it's only a question of law when there's no dispute as to the nature of the condition itself. And I think here, where the trial court erred, is that it found that there was no dispute as to the nature of the condition, where it didn't really consider all the evidence as to what this nature of the condition was. There were some pictures introduced, which I've seen. Correct. And your client testified that there's a 90-degree angle and she was distracted at some point, correct? She was looking at the door as she was approaching this area where she ultimately tripped over, correct? But as I recall from the photograph, this 90-degree angle was after the sidewalk, wasn't it? You saw the sidewalk, the gap, and then you made the turn. Correct. It was the next slab where you made the turn. Right. Okay. So let's assume she was distracted. I'm trying to figure out how that enters into the analysis because if there was in the trial court's mind an open and obvious defect, the fact that the plaintiff was distracted doesn't make the defect any less obvious, does it? Not necessarily. I think the issue here really with open and obvious doctrine is you've got different testimonies as to the nature of the defect, both in terms of height and then Brian Saladino offering this testimony. Mr. Saladino is the one who later fixed this defect at the defendant's request, but Mr. Saladino is also saying there's a width differential. So there's different testimonies and evidence as to what this defect actually was, both in terms of height and width. The case law is also... And with some of the cases that I've cited in my brief, where when you're looking at the nature of the defect under an open and obvious analysis, what you also have to consider is, well, you know, was it open and obvious to both parties? Okay. And that's where we get into the evidence of defendant's testimony, where he was there before on numerous occasions, according to his testimony, at this sidewalk. And he said, I inspect these walkways into my buildings, including this one, on numerous occasions, and I never noticed this defect. That was his testimony. So logically, if it was that open and obvious, he would have noticed it? Correct, and I think the case law picks up on that trend when it considers open and obvious, and it makes the distinction, well, when is it a question of law? When is it a question of fact? Okay. In all the cases where the appellate court reverses and says, no, this is a question of fact in this open and obvious scenario, the trend or the commonality in those cases is that both the defendant and the plaintiff have been to this area, have looked at this condition, and not observed it. Okay, and that was the case in Alcott and Kauai and this Bukakine case versus Lake County YMCA, where the court said, you know, we're looking at this nature of this defect, and, you know, there's different evidence of it, but there's also a situation where neither the plaintiff nor the defendant noticed this to begin with. So at that point, there is a screen of time. Excuse me, little time to see it in that Lake County YMCA case. True, and I don't think the facts are so much similar here, given the nature of the layout of where the sidewalk comes up to this apartment building. In that YMCA case, like Your Honor noted, it was a situation, I think, where the lady had just opened the door, come into a locker, aisle of locker, and tripped over this raised mat. And sure, that's probably closer than what we have here, but here we have a similar type of fact pattern where the plaintiff, you know, is carrying this mail, she's looking at the building, she's looking at the address, she's got to make this angle turn, and it's all in a fairly close proximity. She's also been there like 48 times. Yeah, true, true. And so has the defendant been there several times, okay? But when we get into the nature of the area and the property itself, and, you know, she's looking out for this door that opens outward from the building, where she slides, she's looking... Well, again, you know, I'm hung up. Why would she be looking? The sidewalk goes straight and it makes a 90-degree turn. Correct. The offending slab or slabs is before the 90-degree turn starts. I mean, that's clear from the pictures. It's not as if you're stepping over that slab and then you make the turn, correct? You know, honestly... We'll take a look at the picture, but... And I don't think I have the pictures with me, Judge, and I apologize for that. It's either right... You've got that... It's there and then the turn goes to the door. Correct, so it's actually right at the 90-degree turn. Correct. But why is she looking at... I mean, what does the door have to do with this? Well, I mean, people might come out of the door. I mean, that was part of what the Dukakis case, the appellate court talked about. Well, that's also what Bruns talked about, too, though. I mean, Bruns said that that's a self-made distraction. Yeah, true. And that would go to whether the distraction exception exists in the open and obvious doctrine. Right. That's a separate issue from, you know, is there a disconnect to the nature of the condition itself? Because those cases, you know, that examined the plaintiff and the defendant each noticed this condition, those aren't distraction cases. Those are cases where the open and obvious doctrine has been considered and the court has said, look, this is a type of a condition that neither the plaintiff nor the defendant noticed. And it might be due to various different circumstances. And one of those circumstances is the layout of the property or the layout of what his mat was in relationship to the door in that YMCA case. OK, so I think in the Lake County YMCA case, where the court said, look, you've got to look at the similarity of the color in these two mats and you've got to look at the short time the person has to discover this defect. I think you have a lot of similar facts here where the fact finder can make a reasonable inference that this condition is difficult to discover because when a person is approaching that front door, they're going to be concerned about making the turn. They're going to be concerned about people coming out of this door who are going to be pretty much right there when they come out. There are these facts that lead to a reasonable inference that this condition is difficult to discover. Well, the time factor here, not to deliberate, wouldn't be a factor in those cases, short time to discover it. I mean, if she's been over this slab 40 to 48 times, I don't know that you can really characterize it as little time to discover the problem, right? Well, I think what that case considers any particular time that she's there. But let me ask you this, and you raise an interesting point. Is the issue of whether or not a defect is open and obvious, can't you argue that's always a factual question? It should be a factual question. Is there ever a time when it's not? Well, I mean, the law is pretty clear that where there's no dispute as to the nature of the condition, then it becomes a question of law. I mean, that's the open and obvious doctrine. There is a dispute here, though. Oh, sure. I mean, you have a claimant that says it's 2 to 3 inches, the defendant, 1 1⁄4, and Saldino, 1⁄4. Correct. But then the defense says open and obvious. If Saldino sees 1 to 4 inches, then it's certainly open and obvious. Are those inconsistent positions that they're taking? The defense? I believe it is. I mean, again, you know, I don't blame the defense for arguing each of those positions. I just think it's contradictory to say, well, if it's one, it's got to be the other. Because that's not what a case law means. I mean, ultimately, if you took that type of argument to its logical conclusion, there could potentially or probably never be a case where a person can trip over a deviation and find liability because it would be one or the other. It would be de minimis. It would be open and obvious. Both of those doctrines have their own standards. They have different policy considerations. There's different analysis in each of those doctrines that the court has to undertake. And I think where the trial court really erred in this case and on this open and obvious question is it never really considered the fact of, you know, there really are disputes as to the nature of this condition such that it's, you know, a question of fact. And it did consider that line of case law that said, look, when you've got both a plaintiff and a defendant who've been to an area before have not noticed something as open and obvious, well, that's pretty good evidence that it's not open and obvious. And then once that's the case, it's a question of fact, and then the obviousness question goes to a jury. And then that's essentially our position. If, in fact, it is open and obvious, that takes care of the first two duty factors,  on the current court factors related to duty even if it is open and obvious. Sure. I think the duty is still there, and I think even the trial court said that in its memorandum of opinion when it considered the third and fourth factors. The third factor, the magnitude of the burden, defendants said it cost $500 to repair this. There's a case, Old Kent State Bank, which specifically said the cost of repairing the deviation between two slabs is a small economic burden. So, I mean, that was a de minimis case, but it still considered that issue under the duty analysis in that third factor and said, look, repairing two slabs, you know, for a non-individual is a small economic burden. As far as the consequence, the fourth factor, the consequences of placing that burden on the defendant, there is a clear line of case law that says, you know, we're not going to put municipalities under this burden of, you know, going through every sidewalk and looking at them and forcing them to fix, you know, deviations, okay? This is not that case. I mean, this is a private landowner who has an eight-unit apartment complex, one of several apartment complexes that he has. He's obviously not in a municipality. He generates income from all these apartment complexes. But we have to look at him as he is situated with all these buildings. What does it, 30-some buildings or whatever? True, yeah. So, I mean, we have to, you know, it's certainly not miles of sidewalk like a city, but many, many buildings that he has to maintain. True, and I think as the trial court recognized, well, he outsourced certain activities in these apartment complexes to other people, the lawn maintenance, snow removal, because he realized, I can't do that all myself. To save a dollar, perhaps, he kept various duties for himself, such like he testified to. He would come and inspect the inside of the buildings for leaks, and then I specifically asked him at his deposition, what about the walkways? And he said, yeah, I did that myself, too. Okay, and I think as the trial court recognized when it did say that the factor, that fourth factor leads toward a duty, is that that fact, you know, he can't have it both ways. He can't, you know, save himself a buck and then say, well, it's too hard for me to, you know, the consequence is too great for me. You know, he generates a lot of rent, I presume, on these properties, and, you know, he himself undertook the consequence of looking at all these walkways and sidewalks outside his apartment. He made a business decision that I'm going to do that. I'm going to outsource other work to independent contractors, and I don't think the consequence to him is that great. Where do you see the case law in this? I mean, if it is open and obvious, we have the first two factors favoring a defendant. Yeah. And then, in this case, as you argued in the trial court intimated, third and fourth factors may favor the plaintiff. So, I mean, where do the cases come down on those? I mean, the cases, most of the ones that I've read have involved municipalities where the fourth factor takes it basically off the table. Yeah. So, I mean, does every time that two go to defendant, two go to plaintiff, plaintiff wins or defendant wins? That's an interesting question, Judge, and I don't think we have a clear-cut answer, but I think you touched on it correctly when you initially said, look, when we're going to do municipalities, we're certainly going to look at that fourth factor and say we're not going to throw that consequence on all the municipalities. But, again, this is in that case. How do you answer that question when it's a tie, when it's two to two? Okay, I think you revert back to the original discussion about, well, what is a duty to begin with? What are the public policy considerations here? So, let me ask you this. The picture depicts a sizable gap between, in the width between the two offending slabs, so to speak, okay? How does that pair in the open and obvious doctrine that you're arguing, I think? I mean, you sort of see this thing coming, if you will, in the picture. Well, I think we're all looking at it potentially from benefit of hindsight, Judge, because, obviously, both the plaintiff and defendant were there before and didn't see it, okay? Well, I'm not talking about the difference in the height between the slabs. There's a big gap, too, coincidentally, in the same place between the slabs. Right. Is it your attention drawn to that gap? I don't think so, necessarily. I mean, it wasn't for the plaintiff. It wasn't for the defendant. Do we know if the gap was there when she fell? I will... When Mr. Saladino did the repairs, albeit two years later, he testified there was a gap there. There's no testimony anywhere about a gap around the time frame of the fall. In terms of the width gap? Right, width gap. I don't believe anybody did, okay, other than, I know Mr. Friend, the defendant, said, well, when I looked at it two years later, it was in a similar condition to what the silo was in plaintiff, took a picture of it a year later, okay? But in terms of a natural width situation, necessarily, on the day of the accident, then, you know, I would agree... So there's no specific time frame that's been delineated. It could have been weeks, months, a year, who knows? Is that what you're saying? In terms of the gap, there's no definitive statement as to when that gap was first... In terms of the width gap. Right. The width gap, not the... The width gap. Correct. So, I mean, how does the width gap play into the open and obvious analysis? Well, to me, it raises another factual dispute here and why it turns the question of the nature of this condition, of this defect, into a factual one, such that it's not open and obvious. Thank you, Mr. Zola. You will have time for a rebuttal argument. Thank you. Mr. Brennan, you may proceed. Thank you, Your Honor. You're welcome. May it please the Court, Tom Brennan on behalf of defendant Rick Friend Properties. I'd like to begin... I actually don't want to just restate the arguments made in the brief, so I'd like to just address several of the points raised by Mr. Zola and then speak a little bit more broadly about some of the... what I view as overarching issues here and... Can I ask you a question first? Absolutely. Let's start things off. The open and obvious doctrine only applies where no dispute exists as to the physical nature of the condition in question. Correct. Now, the trial judge found a question of fact on the de minimis argument. You know, it said that there was all these different opinions as to how high the... Why didn't that carry over into the open and obvious also? Because we have anything ranging from, what, one to four? All different opinions about the height of this defect. That's right. What the trial court judge essentially did was to say, look, this is clearly a de minimis case, unless we accept the plaintiff's testimony as true. It's the only way we can... Or Saldino's. Saldino's, that's true. I guess that's true. Which he sort of did, didn't he? Didn't he credit that to the law? I think he raised that. He did mention that in the opinion, Your Honour. I think the difference is here, if you look closely at the record, there actually is no evidence at all as to the height differential or any reference of a gap at the time of the accident. I think that's important. It's not that there's disputed facts here as to that aspect of the condition of the sidewalk. It's that there's simply no facts at all, other than the fact that the plaintiff fell, really. Well, we have the pictures at summary judgment. But the pictures were all taken on January 11th of 2013. Oh, no. The one I'm looking at here was taken by the supervisor March 22 of 12. That's right. And those were taken by some unknown supervisor, and they weren't in front of any witness when they were testifying at the deposition. So if you look closely at those depositions... How did they get the record? Yeah, if it wasn't... That's a great question, Your Honour. And I'm not sure how the plaintiff got those documents or how they got the record. They certainly weren't authenticated. There's no reference at all as to who even took them, other than the fact that the plaintiff said, yeah, I think sometimes supervisors go out to the scene and take pictures. That's it. I mean, they clearly had admissible evidence. And I think that's probably the reason why they weren't put in front of the deponents when they testified. Ms. D'Agostino testified that she thought the gap was between two to three inches, not based on impressions she formed at the time of the fall, only based on impressions she formed looking at the photographs she took on January 11 of 2013. That's clear from her testimony. So you're talking about photographs taken on her phone 10 months after the fall. Well, wasn't there work done at that property after the fall? In 2014, Your Honour. Yes. Didn't Saladino say that he saw signs of previous work before he got there? He did, but that was all done after 2014 when Mr. Friend first became aware of the fall. So the fall takes place in March of 2012. Mr. Friend, the defendant of Richmond Properties, doesn't even become aware that the fall took place until March of 2014, so two years afterwards. So his testimony and Mr. Saladino's testimony is based on observations they made two years plus after the fall took place. The owner had never been to the property? No, he may have observed the sidewalk generally, but he certainly wasn't made aware that the fall had taken place and certainly didn't look specifically at it. How do you respond to Justice Burke's question when he asked, I think he was asking, if it's that open and obvious, how come nobody noticed it before, including the owner? My response to that, Your Honour, would be, it's one thing for something to be open and obvious for a person traversing a sidewalk, right? I mean, somebody who is negotiating these obstacles in real time, I think it's often part of human experience. We notice obstacles, we may even subconsciously move to avoid them, right? It's open and obvious, it's there to see, but it may not be something that a person who visits the property every two months and looks around and says, gee, that's something that somebody is sure to trip and fall on. I don't think most types of people use this. Then it's not open and obvious? Well, I think it's open and obvious from the perspective of the person traversing the sidewalk. And the reason that I would say that it's open and obvious is because the open and obvious doctrine incorporates a number of factors beyond the height differential, if that is, in fact, the defect that's at issue. So here we have a height differential that is implied as leading to the cause of the injury. The other factors in the open and obvious case, all of which are unsputed, are there was no snow, no rain, there's no allegation that it was poorly lit, no allegation that grass was overgrown and somehow obstructing the view of this deviation, no testimony that there was a shovel or some other object obstructing the view of this deviation. So in all, under the case law and in human experience, there was nothing preventing somebody traversing the sidewalk from seeing this condition. So then how's it open and obvious? Because of all those other factors, Your Honor, because if you... So both, whether it's open and obvious for the plaintiff or whether it's open and obvious for the defendant, both of them, it was testified, traversed this property and traveled this location without incident. Nobody ever felt that there was a problem before. So it just, to me, it strains frivolity to say that it's open and obvious. I think the case law is clear that these other factors are what really inform that analysis. And I suppose maybe what Your Honor's having trouble with, and maybe this wraps into a larger issue, is is it inconsistent to argue both of them in this open and obvious? Maybe that's a concern. Yeah, it is. And I would submit that those concepts are different concepts. And yes, they are related. But to me, they're not mirror images of one another. And they don't exist on a continuum. They're kind of inconsistent. In a way, I think that's true. But to me, the case law is clear. They each have their own independent factors that speak to whether something is de minimis, something is open and obvious beyond just a height differential. So there's not a continuum, at least in the case law, that says if something's under 2 inches, it's de minimis. Something's over 2 inches, it's open and obvious. And so you have this continuum where the plaintiff is always stuck in this box where they can never possibly recover because you just measure the height deviation. You're either de minimis or open and obvious, and that's it. That's not the case law, and that's not what we're arguing. What we're arguing here is because of the other factors were so clear that you could apply de minimis. There's no aggravating circumstances here, no heavy traffic, no congestion, no distraction, nothing pled or testified to that would enhance a de minimis argument. There are also all the other factors of open and obvious, which are unique, very, very similar, but also unique, all favor the defendant. Every one of them is undisputed. I don't see those two positions as being inconsistent. I think something could be de minimis, and if there are no aggravating factors, that would result in the plaintiff failing to carry their burden. I think something could be open and obvious because of all the different factors involved, the analysis as a whole, and that would result in no recovery. But you also argue, then, that we're You also argue, then, that he couldn't, being a landowner, he couldn't fix all of this, or it would be cost prohibitive, different reasons for not being able to fix this. So I'm seeing a lot of different arguments here, and maybe it's just like, hey, let's just throw them all out there and see which one sticks. Are they inconsistent positions that you're taking in order to avoid a reversal of some judgment? I don't think they are, but I can understand your question, Your Honor. I think it's a very good one. I think in some sense, we did argue in the alternative, which it can be either or. And I think in some sense, that's really what the trial court judge said, is because the testimony that we're accepting is true to avoid a clear finding that this is de minimis, because if we accept that, we then are in the world of open and obvious. In some ways, that was the crux, I think, of the trial court's decision. I think maybe one of the best ways to answer your question is to point out, and this is something that Mr. Sewell did too, point out some circumstances where the plaintiff can recover. Because Mr. Sewell's point was, are we stuck in this box now, where no matter how we measure the deviation, there's no recovery. It's either de minimis or open and obvious. And I'd like to point out five different situations, fact circumstances, that even under our analysis would give rise to a recovery. So first, the deviation could be de minimis, but there could be aggravating factors. And the case law is clear that if there are aggravating factors, such as heavy traffic, congestion, distraction, weather, slope, surface, as opposed to flat, layout, just in general, if there are aggravating factors, then the plaintiff can carry his or her burden without showing that the height differential is substantial enough. So you can have what would be undisputably a de minimis height deviation, let's say a quarter of an inch. But if you have aggravating factors, you can recover. Like carrying mail? The case law doesn't talk about carrying mail. I'd say here the facts are, she had a white mail day, and she was carrying the mail in one hand. She had one hand free. So I mean, I think Your Honor is right, though. There could be a circumstance where somebody is so brought down with something that they're carrying, that maybe that's an aggravating factor as well. Situation two, the deviation is not de minimis, but it's also not open and obvious due to other factors. In other words, there's rain, there's snow, there's poor lighting, which one of the cases discusses. Standard. Yep. There are, yeah, exactly. There's a distraction, other aggravating factors. Situations three and four, which would lead to recovery, are you have an open and obvious defect, but it falls within one of the two exceptions. So my third situation is it falls within the distraction exception, which is a very generally recognized exception to the open and obvious doctrine. It says, OK, this can qualify as an open and obvious defect, but there was a distraction here. There's no testimony here. In fact, Ms. D'Agostino testified that there was no distraction at all. There was nobody around. I thought she testified something called her attention to the door. At least he made an argument about something. She was looking at the door. I don't believe she testified that anything called her attention to the door. Somebody came out or yelled or anything like that. I think her testimony, Your Honor, was that there was nothing at all preventing her from looking down. In fact, I can give you a record cite to that. I think you're talking about the distraction being like in the Kmart case. Yes, yes, or heavy noise, heavy something that would, or even the Harris case, where the court recognized that people leaving a bank might be distracted because there's heavy commercial traffic. They might be looking at a receipt. They might be thinking about the business they just transacted. So that would be situation three for me. Situation four is it's open and obvious, but the deliberate encounter exception. We're applying so that the gist of that exception is. We're familiar with the exception. Let me ask you this question. Would you agree that the trial court found or held that the third and fourth factors favored the plaintiff? I think the trial court absolutely said that. So my question to you is the same as opposing counsel. Got two on one side, two on the other side. You automatically win, he automatically wins, you automatically win. I think you're right. I think Mr. Zuhl is correct in saying that the case law isn't necessarily clear on that. My take would be. Do you disagree with the trial court's opinion in that first? I mean, I would think that his characterization that factors three and four necessarily favor the plaintiff. Three, you would agree it must. I mean, it's 500 bucks. It's the strongest. That's right. That's right. Unless you were to carry that in, which I guess number four incorporates the idea of it being a greater scale. So talk about the greater scale. What is the greater scale for your client? I think the greater scale for my particular client is, as Your Honor alluded to before, as an owner of residential properties, having multiple properties, not just four or five, but having upwards of, I think, in the 30s of properties to be concerned about, makes it much more similar to a municipality sort of analysis rather than, say, a residential homeowner who has one home. I also think that once you get into the world of favoring factors three and four more than one and two, you're getting to a point where you are going to impose an unreasonable standard, to me, on owners of property. In other words, this maybe goes to a broader point, but. I agree with your argument, but why did the Supreme Court say we go there, then? I mean, realistically, if it's open and obvious, we've knocked out the foreseeability. I mean, why wouldn't there be this public policy that landowners, talk about a single family residence that has a distinct problem with their sidewalk? And does every person have to fix their sidewalk? Right, and I think the trial court got it right in saying that when the first two factors favor the defendant, third and fourth factors favor the plaintiff. Well, I disagree with the trial court on factor four. Even in that situation, it should be no recovery. I think the reason for the analysis, though, is factors one and two, in certain situations, could easily flip in favor of the plaintiff. That would be the likelihood of injury and the foreseeability of injury. And that was actually going to tie in my fifth scenario of recoverability, which is, let's say there's something that is open and obvious. I'm sorry, it's neither or open and obvious. But it's such a substantial defect, right, that it flips the duty analysis and says, OK, excuse me, it is open and obvious, but so open and obvious that it's so likely and so foreseeable that somebody would get hurt, that that's the way to recover. So. Again, the fact that we have two factors in your favor, two factors in the plaintiff's favor, these different height differentiations, aren't those issues for the trial effect? I would say no, Your Honor. Here's why. We're talking about duty here, right, which is clearly a question of law, which is why you would be absolutely correct if there was a substantial disagreement as to the condition of the sidewalk. If there was a disagreement as to the position of the sidewalk? The condition of the sidewalk. There isn't? I would say that there is perhaps a dispute as to the condition of the height differential a year, 10 months after the fall. Nobody has any evidence as to what the condition of the sidewalk was at the time of the fall. But we have a testimony. But the testimony is all about the condition of the sidewalk in 2013, based on looking at a photograph in 2013. Well, let me ask you this, Loni. If you have a complaint where a person says that they tripped over a defect in a sidewalk and were injured, clearly a landowner owns a duty generally to people walking on their sidewalk. Then you file a motion for summary judgment. You're supposed to look at that in the light most favorable to the plaintiff. Shouldn't you be bringing forward the evidence about the height differential at the time and all that? I think that would make sense, Your Honor. The problem is there's no way for the defendant to have developed that evidence at the time of the fall, or any more reasonably close to the time of the fall, which is what I think the Gillock case was getting at in terms of shifting the burden to the plaintiff. Because here we have a situation where the plaintiff fell in March of 2012. My client didn't become aware of that fall until March of 2014. It's a full two years later. At that point, you can't really develop the evidence. I mean, the case law is full of references to how in Illinois, especially in a climate like ours, the sidewalks are specifically designed to allow the slabs to fluctuate with weather, right? So there's going to be shifting down, up. The difference will make it bigger, make it smaller. You don't know. So your client was never made aware of this fall for two years? Correct. Correct, Your Honor. And that's clear in his deposition testimony. It was March of 2014. What was his deposition testimony? Mr. Friend's. Mr. Friend's deposition testimony.  That was her last day as a mail carrier, wasn't it? Yeah, and I'm not sure if she intended to go back, Your Honor. So she never made your client never became aware of it? Correct. Correct. And I think that would be my answer as to the reason for the burden. And I think that really ties into the de minimis argument, which is why that burden, according to the Gillott case, is on the plaintiff to show that the deviation is not de minimis. It's true that the case law does seem to put that burden on the defendant in terms of open and obvious. But how do you carry that burden if you don't know about the fall until two years later? All the testimony, again, I'd just like to drive home this point. And it's a little bit tricky looking at the record, but I'd just like to make this clear. The plaintiff testified that there was a two to three inch gap based on her opinion formed while looking at a photograph taken on January 11, 2013. She never said it's based on my recollection at the time of the fall. She said very clearly in her deposition testimony, I never formed an opinion as to the height deviation at the time of the fall. I can tell what two to three inches is because I'm looking at this photograph that was taken 10 months later. In January 2013, which was a full 10 months later and a full weather cycle later, right? We went from cold to hot weather in 2012, back to cold weather in January 2013. Mr. Friend testified that he made observations about the deviation in 2014. He did make reference to some photographs in his deposition, but they were to the photograph taken in 2013. Mr. Saladino's testimony was after being shown the photograph taken in 2013, where he said, this is a terrible photograph. It's horribly inaccurate. But if you make me give you an opinion, it looks to me like it could be anywhere between one and four inches. So a flawed testimony to begin with. Add to that the fact that it was based on looking at a photograph taken 10 months after the fall. So I dispute the fact that this is a fact case. We have no evidence as to the deviation at the time of the fall. And all the other factors are undisputed. All right, thank you, Mr. Friend. Thank you, Your Honor. Mr. Zuhl, rebuttal argument? Thank you, Your Honor. To answer your question about how this picture got on the record, it was shown to plaintiff by defense counsel, not the one sitting here, but a defense counsel at the trial court level, and said, what is this picture about? Does this picture have been produced in discovery? And she said, well, this is the picture my supervisor took the day after the accident. And it's date stamped. The day after the accident. And I believe that the question was, well, were you there? No, I wasn't. How do you know your supervisor took it then? And I think she said, well, because she told me, and it's the custom and practice of the US Post Office, that when there's an accident involving a male character, they go take a picture of the situation. So to argue today that there's no competent evidence of what Her two to three inch opinion, though, was based on the 2013. I don't necessarily think so. I think she was just, at this point, playing, well, what do you think the deviation was on the day of the accident? And she said two to three inches. And I don't think the photo necessarily disputes that. I think, in fact, it probably corroborates it. So to argue that there's no competent evidence of what this defect looked like on the day of the accident, I think is a little problematic here when you've got a photo the day after the accident. There's no requirement under the case law that the plaintiff get out there with a ruler on the day of the accident. I mean, that is clear. But she never brought this to the attention of the landowner? Well, Judge, I don't know how much you want me to get into my attempted correspondence with the defendant in this case, in terms of serving him with a lien notice and so forth. But I mean, Mr. Friend says he wasn't aware of this accident until what he claims to be two years later. You know, that's not really how my attempts with him to get a hold of him went. But do you have any evidence to dispute that, that he was aware of it before two years? You've indicated you made a good faith effort to carry in contact with him. But apparently, it was unsuccessful? Well, if you believe him, it was, yeah. So well, I mean, ultimately, I don't think it makes a difference whether he knew about this the day after or whether he didn't know about it the day after. I mean, we clearly have evidence of what this defect looked like at the time of this accident. We have a photo from the day after. And I think, you know, that's in the record. It was put in the record through defendant's questioning of the plaintiff in her deposition. And I think that's clear. And just kind of as a last point, with respect to this, you know, how do we, you know, solve this problem? We've got two factors in favor of the defendant and two factors in favor of the plaintiff. I think we revert back to this public policy consideration and what duties are really all about. And again, I mean, we have a, not a commercial landowner, but a person who has several multi-unit apartment complexes. He's not mom and pop on any house on any street. I mean, he's clearly fairly sophisticated here. He incorporates, he runs this business, and he clearly, you know, delegates outside people to do certain tasks, and he keeps certain tasks for himself. And as the trial court recognized here, you know, he can't have the argument where he's going to say that it's too big of a consequence, but he's going to save the money of not paying somebody to maintain these walkways. And ultimately here, I think the public policy consideration is that property owners, in his circumstances, under these set of facts, have a duty to maintain their property in a reasonably safe condition. I would ask that the trial courts grant a summary judgment be reversed. Thank you, counsel. Thank you. The court will thank both counsel for the quality of their arguments here today. The case will be taken under advisement, and we are adjourned.